UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 8, 2023

LETTER TO ALL PARTIES

Re:   *Elsir S. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2602-BAH

Dear Counsel and Plaintiff:

On October 11, 2022, Plaintiff Elsir S. ("Plaintiff"), proceeding *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case, ECF 13, Plaintiff's correspondence, ECF 17,[1] and Defendant's motion for summary judgment, ECF 20,[2] and Plaintiff's responsive correspondence, ECF 22. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Defendant's motion, REVERSE the SSA's decision, and REMAND the case to the SSA for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on May 30, 2018, alleging a disability onset of April 22, 2013. Tr. 315–17. Plaintiff's claim was denied initially and on reconsideration. Tr. 193–97. The Administrative Law Judge ("ALJ") held a hearing on December 1, 2020, Tr. 89–132, and a supplemental hearing on April 13, 2021, to elicit further expert medical and vocational testimony, Tr. 74–88. Following the hearing, on August 18, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 57–68. On September 23, 2022, the Appeals Council ("AC") adopted the ALJ's findings or conclusions regarding whether Plaintiff was

---

[1] Plaintiff's correspondence consists of medical records, a divorce certificate, photos, and emails. ECF 17. Plaintiff appears use his email account as a word processor.

[2] Though Defendant's filing is docketed as a brief, it is styled as a motion for summary judgment. As such, I will treat it as a motion for summary judgment.

[3] 42 U.S.C. §§ 301 et seq.

*Elsir S. v. Kijakazi*
Civil No. 22-2602-BAH
September 8, 2023
Page 2

disabled. Tr. 29–32. The AC determined that Plaintiff's date last insured was actually December 31, 2018, not September 30, 2018, as the ALJ had determined. *Id.* Nevertheless, the AC determined that Plaintiff was not disabled through December 31, 2018. *Id.* The AC's decision incorporating the ALJ's decision constitutes the final, reviewable decision of the SSA.[4]

## II.    **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of April 22, 2013 through his date last insured of September 30, 2018."[5] Tr. 60. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "diabetes mellitus; diabetic neuropathy; hypertension; hypothyroidism; peripheral artery disease; osteoarthritis; dermatitis; and traumatic brain injury (TBI) causing mild cognitive disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "adjustment disorder and altered mental state." *Id.* At step three, the ALJ determined that through September 30, 2018, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ determined that, through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except was able to work in an environment with no more than occasional exposure to high humidity or extremes in temperature; and occasional contact with undue amounts of dust or known pulmonary irritants. On and prior to September 30, 2018, the claimant was able to work with no exposure to unprotected heights or dangerous machinery. On and prior to September 30, 2018, the claimant was able to perform jobs allowing him to use a cane for balance and dizziness when walking, but was able to walk short distances without it. On and prior to September 30, 2018, the claimant was

---

[4] I refer to the ALJ's decision to the extent that it was adopted by the AC.

[5] As noted above, the AC determined that Plaintiff's actual date last insured was December 31, 2018, but ultimately found that "the record supports the [ALJ's] findings" through December 31, 2018. Tr. 30.

> able to perform work that could be learned in one month or less and that involved simple instructions. Based on seizures together with headaches and dizziness, on and prior to September 30, 2018, the claimant was able to perform work allowing him to be off task five percent of an eight hour day and absent one time per month.

Tr. 61. The ALJ determined that Plaintiff was not able to perform past relevant work as a taxi driver (DOT[6] # 913.463-018) or home health aide (DOT # 354.377-014) but could perform other jobs that existed in significant numbers in the national economy, including final assembler (DOT # 713.687-018), document preparer, scanner (DOT # 249.587-018), and table worker (DOT # 739.687-182). Tr. 66–67. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 68.

### III.   LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

I have carefully reviewed the ALJ's decision, the AC's decision, and the record. When reviewing a *pro se* Social Security appeal, the Court must "(1) examin[e] whether the SSA's decision generally comports with regulations, (2) review[] the ALJ's critical findings for compliance with the law, and (3) determin[e] from the evidentiary record whether substantial evidence supports the ALJ's findings." *Young R. v. Comm'r Soc. Sec. Admin.*, No. SAG-18-2980, 2019 WL 2078637, at *1 (D. Md. May 10, 2019) (quoting *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005)). Here, the ALJ properly evaluated Plaintiff's claim using the five-step

---

[6] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

sequential process. However, the ALJ failed to comply with relevant regulations and caselaw at step three of the sequential evaluation, so remand is warranted.

At step three of the sequential evaluation, an ALJ is tasked with determining whether any of a claimant's impairments satisfy the requirements of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York,* 476 U.S. 467, 471 (1986)). A claimant bears the burden of production and proof at step three, *see Hancock*, 667 F.3d at 472, but the ALJ must still provide "a record of the basis for the ALJ's ruling," consisting of "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295. "In evaluating a claimant's impairment" under the Listings at step three, "an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). The Fourth Circuit has emphasized that when an ALJ cites specific listings but "engage[s] in [only a] conclusory analysis" rather than "apply[ing] findings to the disability listing," the Court is unable to engage in judicial review and must remand to the SSA. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015); *see also Radford*, 734 F.3d at 295 (holding that, where an ALJ's failure to sufficiently articulate the basis for concluding that a claimant does not meet a particular listing, the proper remedy is reversal and remand).

In this case, the ALJ ordered additional testimony and interrogatories by a medical expert ("ME"). Tr. 74–88, 733–45. At the supplemental hearing, the ME testified that Plaintiff's impairments equal Listing 11.14 (peripheral neuropathy) under subsection A[7] due to "ongoing" epilepsy, "documentation [of] multiple falls, unsteady gait . . . , a very well documented neuropathy that was noted in the record," "as well as the tests . . . , documentation of the claudication of the bilateral legs," and "peripheral vascular disease" evidenced in Exhibit 5F. Tr. 85–86. The ME testified that "although the seizures themselves don't quite meet the listing level, as far as occurrence," combined with the other symptoms listed above, Plaintiff met Listing 11.14(A). Tr. 86. The ME testified that Plaintiff had an extreme limitation in the "ability to stand up from a seated position" or "balance while standing and walking." Tr. 86–87. Though the ME did not testify as to *when* Plaintiff met Listing 11.14(A) at the hearing, he clarified in subsequent interrogatories that "[L]isting 11.14 is equaled with sufficient recorded documentation such that the claimant's listed physical impairments equal [Listing 11.14(A) as] of approximately October 2019." Tr. 740. The ME cited specific evidence in the record to support this conclusion. Tr. 740–42. The ME also indicated, without any supporting explanation, that Plaintiff did not equal the

---

[7] To meet subsection A of Listing 11.14, a claimant must have "[d]isorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.14(A) (internal citations omitted).

*Elsir S. v. Kijakazi*
Civil No. 22-2602-BAH
September 8, 2023
Page 5

listing as of April 22, 2013, the alleged onset date, or September 30, 2018.  Tr. 744.

Despite this evidence, at step three, the ALJ failed to discuss Listing 11.14 beyond a cursory mention of the listing.[8]  Tr. 60 ("The claimant's impairments, singly or in combination, did not meet or equal the regulatory requirements of any listing.  The undersigned specifically considered Listings 9.00, 11.02 and 11.14.").  The remaining portion of the ALJ's step three analysis discusses exclusively the "paragraph B" criteria of Listing 12.02.

The error here is directly analogous to that in *Radford* and *Fox*.  "As in *Radford*, where the ALJ stated that he had 'reach[ed] this conclusion' after he 'considered, in particular,' the listings, in this case, the ALJ's analysis was likewise perfunctory and offered nothing to reveal *why* he was making his decision.  Nor was there any 'specific application of the pertinent legal requirements to the record evidence.'" *Fox*, 632 F. App'x at 755 (quoting *Radford*, 734 F.3d at 295) (emphasis in original).  "As a result, the ALJ's findings lack the 'necessary predicate' for us to engage in review." *Id.* (quoting *Radford*, 734 F.3d at 295).

Listing 11.14 was clearly a pertinent listing in this case, as the ME had testified that Plaintiff equaled subsection A of the listing, at least after the date last insured.  Tr. 86, 740.  The ALJ, therefore, under *Radford* and *Fox*, should have explained why she concluded that Plaintiff did not meet Listing 11.14 as of the date last insured.  Though much of the record evidence pertains to the time period after the date last insured—i.e., the evidence the ME cited to as support for the conclusion that Plaintiff met Listing 11.14(A) as of October 2019—there is other evidence in the record demonstrating that Plaintiff's symptoms began well before the date last insured.  For example, in the medical report at Exhibit 2F, which the ALJ appears to have credited, Colonel (Ret.) Faisal Al Agraa wrote that Plaintiff presented to the medical center on January 29, 2014 "complaining from vertigo, amnesia and some convulsions."  Tr. 483.  The report went on to state that Plaintiff "has been taking medication annually and he has been following up every two months since 2014 and up to the [date, January 29, 2018,] of this report." *Id.*  Because the ALJ failed to provide the required explanation for her step three conclusions, remand is required.  I express no opinion on the ALJ's ultimate disability determination on remand.

I note that the ALJ's discussion of the "paragraph B" criteria for Listing 12.02 also appears to be relevant to the analysis regarding Listing 11.14(B).  Both listings involve the four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.14(B), 12.02(B).  The requirements, however, differ for each listing.  To meet Listing 11.14(B), a claimant must have (1) a "[m]arked limitation in physical functioning" and (2) a "marked limitation in one of the four areas of mental functioning." *Id.* § 11.14(B) (internal citations omitted).  To satisfy paragraph B of Listing 12.02, a claimant must have either an "[e]xtreme limitation of one, or marked limitation of two" of the areas of mental functioning. *Id.* § 12.02.

---

[8] The AC's finding was even more cursory, failing to cite any specific listing at all.  Tr. 31.

As such, and though it is not necessarily an independent basis for remand here, the ALJ's discussion of the "paragraph B" criteria may be internally inconsistent. Here, the ME testified that Plaintiff had an extreme physical limitation, a requirement of Listing 11.14(A). Tr. 86–87. Because an "extreme" limitation is more severe than a "marked" limitation, Plaintiff necessarily met the first prong of Listing 11.14(B). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02(G)(2) ("'[M]arked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation."). Plaintiff would have satisfied the second prong of the listing (and, therefore, the listing itself) had he been found to have a marked limitation in one of the four areas of mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.14(B). But the ALJ's analysis of the "paragraph B" criteria is cursory, which may have resulted in an internal inconsistency in the ALJ's evaluation of the severity of Plaintiff's limitations in concentrating, persisting, and maintaining pace and understanding, remembering, or applying information. The ALJ found that "[o]n and prior to September 30, 2018, the claimant had a moderate limitation in understanding, remembering, or applying information; no limitation in interacting with others; a moderate limitation in regard to concentrating, persisting, or maintaining pace; and no limitation for adapting or managing oneself." Tr. 60. Yet the ALJ went on to note that "the evidence of record indicated loss of memory and difficulty concentrating. In fact, he was described as having amnesia as far back as 2009; with another trauma in December 2013, both of which affected his memory." Tr. 61. Based on the ALJ's citation to this evidence, it is unclear how the ALJ determined that Plaintiff had only a moderate limitation in concentrating, persisting, and maintaining pace and understanding, remembering, or applying information during the relevant period, as opposed to a marked (or more severe) limitation. On remand, the ALJ should more thoroughly explain this reasoning.

For the reasons set forth herein, the SSA's motion for summary judgment, ECF 20, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge